UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO:** |
|  | : |  |
| v. | : | **GRAND JURY ORIGINAL** |
|  | : |  |
| **PAUL MAUCHA and** | : | **VIOLATIONS:** |
| **MELISA SHAPIRO,** | : |  |
|  | : | **18 U.S.C. § 1349** |
| Defendants. | : | (Conspiracy to Commit Wire Fraud) |
|  | : |  |
|  | : | **18 U.S.C. § 1343** |
|  | : | (Wire Fraud) |
|  | : |  |
|  | : | **18 U.S.C. § 1957** |
|  | : | (Engaging in Monetary Transactions in Criminally Derived Property) |
|  | : |  |
|  | : | **18 U.S.C. §§ 981(a)(1)(c), 982(a)(1); 21 U.S.C. § 853(p); and 28 U.S.C. § 2461(c)** |
|  | : | (Criminal Forfeiture) |

## INDICTMENT

The Grand Jury charges that:

## INTRODUCTION

At all times relevant to this Indictment:

### Relevant Entities and Individuals

1.  American Eagle Services Group Inc. ("AESG"), also known as AESG Capital, was a shell company with a business address in the District of Columbia. AESG falsely advertised online that it could provide victims with numerous services including business and project financing and investment opportunities. AESG also purported to have access to a

privately managed trust with assets in excess of five billion U.S. dollars. In fact, AESG did not provide any of these services or have access to these assets.

2. Defendant PAUL MAUCHA was a resident of the District of Columbia. MAUCHA incorporated AESG in the District of Columbia in or around May 2009. MAUCHA held himself out as the Managing Member or Principal of AESG, and used AESG to execute purported lending and investment agreements with victims. MAUCHA also purported to control related entities called AESG Capital Trust and Source One Surety (the "AESG related entities") through which he offered surety bonds. MAUCHA was also the sole signer on AESG's bank accounts, through which he received and distributed victims' funds.

3. Defendant MELISA SHAPIRO was a resident of Connecticut. SHAPIRO raised significant sums of money for MAUCHA online in exchange for a share of the proceeds. SHAPIRO raised money by communicating with brokers online who would refer potential victims to her in exchange for a finder's fee. She then communicated with these victims and acted as an intermediary between the victims and MAUCHA, and often held herself out as the Chief Operating Officer of AESG. In this role, SHAPIRO generally forwarded prospective victim inquiries to MAUCHA for approval, collected victim asset information, and sent victims the purported AESG loan or investment agreements for them to sign. SHAPIRO often introduced victims to AESG through a company she controlled called Gabriel Jordan Mortgage Company, and received payments from MAUCHA at a bank account in that company's name on which she was the sole signer.

4. Victim A was a resident of New Jersey, and the owner of Company A, which was created for purposes of real-estate development.

5. Victim B was a resident of Colorado, and the owner of Company B, which he created for the purpose of real-estate development and investment.

6. Victim C was a resident of Rhode Island, and the owner of Company C, which he created for the purpose of construction management.

### The Conspiracy and Scheme to Defraud

7. From in or around 2014 through in or around 2019, MAUCHA and SHAPIRO, and others known and unknown to the Grand Jury conspired and agreed with each other to engage in a scheme to make numerous misrepresentations about AESG (and the AESG related entities) and its assets and access to money and capital, among other false and fraudulent pretenses, representations, and promises, to fraudulently induce borrowers, lenders, and investors to transmit money to AESG, and to allow AESG to retain their invested and/or loaned funds.

### Purpose of the Conspiracy and Scheme to Defraud

8. The purpose of the conspiracy and scheme to defraud was for MAUCHA and SHAPIRO to (a) unlawfully enrich themselves by (i) falsely promising to provide victims with financing, surety bonds, and investing opportunities through AESG (and the AESG related entities) in exchange for advance fees, and (ii) borrowing funds based on false representations about how the funds would be used and AESG's ability to repay; and (b) conceal their schemes by lulling victims with false assurances about their promised financial services, AESG's access to capital, and AESG's ability to provide refunds.

### Manner and Means of the Conspiracy and Scheme to Defraud

9. Among the manner and means by which MAUCHA and SHAPIRO, together with co-conspirators known and unknown to the Grand Jury, carried out the objectives of the conspiracy and scheme to defraud were the following:

### *The Lending Agreements*

10. Using false and fraudulent pretenses, representations, and promises, MAUCHA, SHAPIRO, and co-conspirators induced victim-borrowers to enter into lending agreements with AESG. In these lending agreements, AESG promised to provide borrowers with loans for various projects. But AESG first required a "commitment fee" or "due diligence fee" from the borrower in exchange for AESG's commitment to lend. AESG, through MAUCHA and SHAPIRO, falsely told victims that these fees went towards the cost of AESG underwriting the loan.

11. MAUCHA, SHAPIRO, and their co-conspirators induced victim-borrowers to pay these advance fees by leading victim-borrowers to believe that (1) AESG had the money to lend and (2) they could obtain a refund, typically 80% of their fee, if AESG did not fund the loans. However, MAUCHA and SHAPIRO knew that AESG did not have the capital to make these loans at the time the lending agreements were executed, and refunds could not be assured because MAUCHA and SHAPIRO were splitting the fees between themselves and spending them; there were no monies being retained that could be refunded. And, as MAUCHA and SHAPIRO knew, to the extent any refunds were made to certain borrowers, those refunds came from other borrowers' due-diligence payments.

12. Despite being unable to meet their lending or refund promises to old borrowers, MAUCHA and SHAPIRO continued to induce new borrowers with false and fraudulent representations that AESG had money to fund their loans and could provide a refund if the funding failed to materialize—knowing that neither representation was true—and to accept and spend commitment and due diligence fees from new borrowers.

### *The Investment Proposals*

13. MAUCHA, SHAPIRO, and co-conspirators further induced victim-investors to pay funds to AESG through false and fraudulent pretenses, representations, and promises. Among other things, they misrepresented the use of investors' funds by stating that such funds would be placed in a high-yield trading program when in fact MAUCHA and SHAPIRO misappropriated large portions of the victims' funds for themselves and the brokers who introduced the victims to AESG and for other unauthorized purposes. When any refunds were issued, they typically came from funds transmitted to AESG by other victims.

14. For example, after accepting $100,000 in commitment fees for a purported $20,000,000 loan on or about September 17, 2015 from Victim A that they never funded, MAUCHA and SHAPIRO then convinced Victim A to send AESG another $50,000 to invest in a high-yield investment program through a joint venture agreement with AESG on or about October 20, 2015. MAUCHA and SHAPIRO represented that if Victim A placed his funds in AESG's high-yield investment program Victim A could more quickly obtain the capital needed for Victim A's project.

15. Rather than place Victim A's $50,000 in a high-yield investment program as promised, MAUCHA and SHAPIRO misappropriated the money and split it between themselves. Victim A transferred the $50,000 to AESG's bank account in two separate wires in the amount of $25,000 each. After the second wire, SHAPIRO forwarded to MAUCHA an email with Victim A's $25,000 wire transfer receipt and wrote, "always a great way to start the week – making 12,500 each!"

### *Fraudulent Loan from Victim B*

16. On or about December 7, 2016, SHAPIRO approached Victim B, whom SHAPIRO and MAUCHA had previously induced to pay funds to AESG based on false and fraudulent pretenses, representations, and promises in an investment proposal. SHAPIRO advised Victim B that if he provided AESG with $120,000, AESG would use it "solely" to pay "swift fee and transfer fees" in order to secure $10,000,000 for AESG from Barclays Bank, from which Victim B's investment return would be paid in addition to a 100% return on the loan.

17. On or about December 9, 2016, SHAPIRO, copying MAUCHA, told Victim B that his funds would be used to pay Barclays, as "AESG must wire the $120,000 to Barclays Bank." Induced by this and other false and fraudulent representations and promises, Victim B wired $120,000 to AESG's bank account.

18. MAUCHA and SHAPIRO did not transfer Victim B's money to Barclays as they had promised. Instead, MAUCHA transferred at least $25,000 of Victim B's money to SHAPIRO and spent the remaining funds on himself.

19. MAUCHA and SHAPIRO also obtained a worthless indemnity bond to make Victim B believe repayment on his loan would be guaranteed.

20. Ultimately, Victim B never received a return on his investment or repayment of the $120,000 loan to AESG.

### *Surety Bonds*

21. Starting in late 2016, MAUCHA and SHAPIRO started offering fraudulent surety bonds through a shell company called Source One Surety, LLC and an entity called AESG Capital Trust. A co-conspirator in Los Angeles marketed these surety bonds to building contractors and film producers who needed to demonstrate they had the financial backing to

6

follow through on their respective projects. MAUCHA and SHAPIRO committed to pay out on the surety bond to a third-party beneficiary if the purchaser of the bond failed to meet its obligations to the third-party beneficiary. MAUCHA and SHAPIRO typically charged 10% of the bond's value, and typically requested that payment be wired to an attorney's escrow account. Neither MAUCHA nor SHAPIRO had the assets to back any of the proposed surety bonds.

*Lulling Statements to the Scheme's Victims*

22. Throughout the conspiracy and scheme, MAUCHA and SHAPIRO sent emails in which they falsely represented to victims of the lending agreements and investment proposals the status of the victims' funding and investments and the likelihood they would obtain the funds they sought or realize a return.

23. During the course of the conspiracy and scheme, MAUCHA and SHAPIRO defrauded more than 20 victims of more than $2 million.

## COUNT ONE
(Conspiracy to Commit Wire Fraud – 18 U.S.C. § 1349)

24. The allegations in paragraphs 1 through 23 are realleged and incorporated herein.

25. From at least in or around 2014 through at least in or around 2019, in the District of Columbia, and elsewhere, defendants

**PAUL MAUCHA and**

**MELISA SHAPIRO,**

did knowingly and intentionally, that is, with the intent to advance the conspiracy, combine, conspire, and agree with other individuals known and unknown to the Grand Jury, to commit wire fraud, that is, to knowingly and willfully, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, transmit and cause to

be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purposes of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

26. The allegations in paragraph 8 are realleged and incorporated by reference as a description of the Purpose of the Conspiracy.

### Manners and Means of the Conspiracy

27. The allegations in paragraphs 9 through 23 are realleged and incorporated by reference as a description of the Manner and Means of the Conspiracy.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS TWO THROUGH FOUR
### (Wire Fraud – 18 U.S.C. § 1343)

28. The allegations in paragraphs 1 through 23 are re-alleged and incorporated herein.

29. From at least in or around 2014 through at least in or around 2019, in the District of Columbia, and elsewhere, defendants,

**PAUL MAUCHA** and

**MELISA SHAPIRO,**

aided and abetted by each other and others known and unknown to the Grand Jury, did knowingly and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, transmit and cause to be transmitted, by means of wire communications in interstate commerce, writings, signals, pictures, and sounds, for the purpose of executing such scheme and artifice.

### Purpose of the Scheme and Artifice

30. The allegations contained in paragraph 8 are re-alleged and incorporated by reference as a description of the Purpose of the Scheme and Artifice.

### Manner and Means of the Scheme and Artifice

31. The allegations contained in paragraphs 9 through 23 are re-alleged and incorporated by reference as a description of the Manner and Means of the Scheme and Artifice.

### Use of Wires

32. On or about the dates specified as to each count below, PAUL MAUCHA and MELISA SHAPIRO, in the District of Columbia and elsewhere, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, did knowingly transmit and cause to be transmitted, by means of wire, radio, and television communication, writings, signals, pictures, and sounds in interstate and foreign commerce for the purposes of executing such scheme and artifice, as set forth below:

| Count | Date | Description of Interstate Wire |
|---|---|---|
| TWO | May 27, 2016 | Wire transfer of approximately $25,000 from Victim C's bank account in Rhode Island to AESG's bank account ending in 4370 in the District of Columbia as a "due diligence deposit" for $1 million loan AESG was committing to fund |
| THREE | August 24, 2016 | Email from MAUCHA within the District of Columbia to SHAPIRO outside the District of Columbia approving of an email to be sent to AESG's borrowers providing update on status of loans and offering refund of paid fees. |
| FOUR | December 9, 2016 | Email from SHAPIRO outside the District of Columbia to MAUCHA in the District of Columbia, Victim B, and Victim B's attorney informing Victim B that AESG would wire $120,000 of Victim B's loan funds to Barclays Bank |

9

Each count of which is a separate violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS FIVE AND SIX
### (Engaging in Monetary Transactions in Criminally Derived Property – 18 U.S.C. § 1957)

33. The allegations in paragraphs 1 through 23 are re-alleged and incorporated herein.

34. On or about the dates specified below, in the District of Columbia, and elsewhere, defendants,

**PAUL MAUCHA and**

**MELISA SHAPIRO,**

aided and abetted by each other, on or about the dates specified as to each count below, knowingly engaged and attempted to engage in monetary transactions affecting interstate and foreign commerce in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, namely, Wire Fraud, in violation of Title 18, United States Code, Section 1343:

| Count | Date | Description of Monetary Transaction | Amount |
|---|---|---|---|
| FIVE | June 15, 2016 | Wire transfer from AESG's bank account ending in 4367 at Bank of America to Gabriel Jordan Mortgage Co.'s bank account ending in 1676 at JP Morgan Chase | $30,000 |
| SIX | December 12, 2016 | Wire transfer from AESG's bank account ending in 4367 at Bank of America to Gabriel Jordan Mortgage Co.'s bank account ending in 1676 at JP Morgan Chase | $20,000 |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE ALLEGATIONS

35. The allegations contained in Counts One through Four of this Indictment are re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18,

United States Code, Sections 981(a)(1)(C) and 982(a)(2) and Title 28, United States Code, Section 2461(c).

36. The allegations contained in Counts Five and Six of this Indictment are re-alleged and incorporated by reference for purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(1) and Title 28, United States Code, Section 2461(c).

37. Upon conviction of a violation of the offenses in violation of Title 18, United States Code, Sections 1343 and 1349, set forth in Counts One through Four of this Indictment,

**PAUL MAUCHA** and

**MELISA SHAPIRO,**

the defendants herein, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses, including a money judgment.

38. Upon conviction of a violation of the offenses in violation of Title 18, United States Code, Section 1957, set forth in Counts Five and Six of this Indictment,

**PAUL MAUCHA** and

**MELISA SHAPIRO,**

the defendants herein, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property, including a money judgment.

39. If any of the property described above, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

      c. has been placed beyond the jurisdiction of the court;

      d. has been substantially diminished in value; or

      e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

    40. In keeping with the foregoing, it is the intent of the United States to seek forfeiture of any other property of the defendants up to the value of all forfeitable property as described above. All of which is pursuant to Title 18, United States Code, Sections 981(a)(1)(A), (a)(1)(C) and 982, and Title 28, United States Code, Section 2461(c).

A TRUE BILL,

_____
FOREPERSON

DANIEL S. KAHN
Acting Chief, Criminal Division, Fraud Section
United States Department of Justice

By: *William E. Johnston*
William E. Johnston, Assistant Chief
Kyle W. Maurer, Trial Attorney

*Channing D. Phillips/jpk*
CHANNING D. PHILLIPS
Acting United States Attorney for the
District of Columbia